## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF TEXAS (SHERMAN)

| | |
|---|---|
| In re: ) ) **AMAZING ENERGY MS, LLC** ) ) ) Debtor. ) ) | **Chapter 11** Case. No. 20-41558 |
| In re: ) ) **AMAZING ENERGY LLC** ) ) ) Debtor. ) ) | **Chapter 11** Case. No. 20-41561 |
| In re: ) ) **AMAZING ENERGY HOLDINGS, LLC** ) ) ) Debtor. ) ) | **Chapter 11** Case. No. 20-41563 *Jointly Administered Under Case No. 20-41558 |

**SECURED CREDITORS' OBJECTION TO QUALIFICATION OF BIG STAR INVESTMENTS, LLC AS A QUALIFIED BIDDER AND OBJECTION TO ITS APPROVAL AS WINNING BIDDER**

COME NOW, Arnold Jed Miesner, Lesa Renee Miesner, Petro Pro, Ltd and JLM Strategic Investments, LP (hereafter, collectively called, "Secured Creditors") and file this their Objection to the Qualification of Big Star Investment, LLC as a Qualified Bidder and to its Approval as Winning Bidder of the New Mexico properties. In support thereof, Secured Creditors would respectfully show the following:

**BIG STAR INVESTMENTS, LLC ("BIG STAR") IS NOT A QUALIFIED BIDDER UNDER THE Bid Procedures Order**

1. The Bid Procedures Order sets out the mandatory elements for any bidder other than Secured Creditors to be a qualified bidder. See Exhibit A (Docket No. 370).

2. These bid procedures were ordered by the Court after extensive contested hearings.

3. Paragraph 1(l) of the bid procedures provides in pertinent part:

(l)     If the Bidder or any principal, officer and/or director and/or managing member and/or employee of the Bidder is or was an insider of any of the jointly administered Debtors and/or AEOG, such Bidder shall represent and certify in writing at the time of the submission of any Bid that: (1) all information available to such Bidder that was directly or indirectly obtained through any of the Debtors or AEOG pertaining to any of the Debtors has been disclosed to the Neutral Party and has provided such information or material to the Neutral Party such that such information or material shall be placed and has been placed in the Data Room by no later than two weeks prior to the Bid Deadline. . . .

(2) the Bidder (or any principal, officer and/or director and/or managing member and/or employee of the Bidder) has disclosed any compensation or assets received from any of the Debtors, and whether such compensation or assets were approved by the Bankruptcy Court if such were received on or after April 6, 2020.

4. Attached hereto as Exhibit B is Big Star Investments, LLC's bid.

5. Lucas Knickerbocker is the principal of Big Star. Lucas Knickerbocker is an insider. Knickerbocker runs the operations of the Debtors and its related operator, Jilpetco, and is responsible for the Monthly Operating Statements, and providing the relevant status and information regarding all of the Debtors' operations and financial condition to the Court, creditors and parties in interest. Knickerbocker has knowledge regarding all issues relating to lease validity, royalty payments, bonus payments, production, production costs, lessor disputes, governmental reports and permits, accounts receivable, accounts payable, oil and gas contracts, equipment, labor, etc., among other things.

6. Lucas Knickerbocker has knowledge regarding his compensation from the Debtors since April 6, 2020.

7. Despite the foregoing, Lucas Knickerbocker and Big Star failed to follow the provisions set forth above required by the Bid Procedures Order.

8. Big Star's bid is in violation of the Bid Procedures Order. Accordingly, Big Star is not a qualified bidder under the Bid Procedures Order.

9. As such, Big Star should not have been allowed to bid at the auction, and should not be confirmed by this Court as the Successful Bidder for the New Mexico properties.

10. Big Star, an entity controlled by its insider, Lucas Knickerbocker, should not be rewarded for its violations of the Bid Procedures Order and allowed to have its bid confirmed.

11. Secured Creditors were present at the auction which was held on February 28, 2022. Secured Creditors bid the amount of $355,000 for the New Mexico properties. No other bids for the New Mexico properties were received.

12. Secured Creditors are willing and able to pay their qualified bid of $355,000 for the New Mexico properties.

13. Secured Creditors request the Court to disallow the Big Star bid, to confirm Secured Creditors as the Successful Bidder, to enter its order accordingly, and for such other and further relief as is just.

Respectfully submitted,

LAW OFFICE OF CAROL LYNN WOLFRAM

*/s/ Carol Lynn Wolfram*
Carol Lynn Wolfram
clwolframlegal@gmail.com
State Bar No. 18546500
P.O. Box 1925
Denton, Texas 76202
(940) 321-0019
(940) 497-1143 – facsimile

Rosa R. Orenstein
Texas Bar No. 1753200
Orenstein Law Group, P.C.
1201 Elm Street, Suite 4020
Dallas, Texas 75270
(214) 757-9101
(972) 764-8110 (fax)
rosa@orenstein-lg.com
Attorneys for Jed Miesner, Lesa Renee Miesner, Petro Pro, Ltd, and JLM Strategic Investments, LP

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure, on March 4, 2022, to counsel for AAPIM, LLC, general counsel of record for Amazing Energy, LLC and Amazing Energy Holdings, LLC, counsel for Wyatt Petroleum, LLC and Wyatt Permium, LLC, the Neutral Party, the United States Trustee, and all creditors and parties in interest requesting ECF notification, by one or more of the following indicated methods:

|     |                                              |
| --- | -------------------------------------------- |
| __  | first class mail;                            |
| __  | certified mail, return receipt requested;    |
| __  | receipted federal express or overnight mail; |
| __  | hand delivery;                               |
| __  | facsimile;                                   |
| _x_ | e-mail/efile notification.                   |

                                                   */s/ Carol Lynn Wolfram*
                                                 Carol Lynn Wolfram

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

<span style="color:red">**EXHIBIT A**</span>

| | | |
|---|---|---|
| In re: | § § § § § § § | Chapter 11 |
| AMAZING ENERGY MS, LLC, | | Case No. 20-41558 |
| Debtor. | | |
| In re: | § § § § § § § | Chapter 11 |
| AMAZING ENERGY, LLC, | | Case No. 20-41561 |
| Debtor | | |
| In re: | § § § § § § § § § | Chapter 11 |
| AMAZING ENERGY HOLDINGS, LLC, | | Case No. 20-41563 |
| Debtor | | *Jointly Administered Under Case No. 20-41558 |

**ORDER ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH SALE OF CERTAIN DEBTOR ASSETS**

On December 14, 2021 and December 21, 2021, the Court heard the Motion to Approve Bidding Procedures in Connection with Sale of Certain Debtor Assets and Joint Plan of Liquidation filed by Arnold Jed Miesner and Lesa Renee Miesner ("Miesner"), Petro Pro, Ltd. ("Petro Pro"), and JLM Strategic Investments, LP ("JLM" and collectively the "Plan Proponents") [Dkt. No. 321] ("Plan Sale Motion"). On January 4, 2022 and January 6, 2022, the Court heard the *Motion for Order Approving (A) Motion for Sale of Property of the Estate Free and Clear of Liens and Claims, (B) Approving Auction Procedures and Bid Procedures, (C) Approving Form and Manner of Notices, (D) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale and Related Matters, and (E) Appointment Of Independent*

*Bid Evaluator and Granting Related Relief* [Dkt. #331] filed by Amazing Energy MS, LLC, Amazing Energy LLC and Amazing Energy Holdings, LLC (the "Debtors") ("Debtors' Sale Motion") (collectively the Plan Sale Motion and the Debtors' Sale Motion hereafter called the "Motions"). It appearing that the Court has jurisdiction to consider the Motions; and it appearing that the relief requested in the Motions is in the best interests of the Debtors, their estates and creditors; and it appearing that due and appropriate notice of the Motions has been given and no further notice need be given; and after considering the evidence and argument of counsel upon the proceedings before the Court, and good and sufficient cause appearing; the Court finds that cause exists to grant the Motions as set forth below. The following is hereby **ORDERED:**

1. The Court finds that only one sale should be conducted pursuant to the Motions;

2. The Sale Procedures attached hereto as Exhibit A are hereby approved; Jay D. Haber ("Neutral Party") is hereby authorized to market the Assets and conduct the Auction, under the terms and conditions described in the Sale Procedures;

3. The total fee to be charged by Neutral Party for the sale to be conducted is $15,000.00 to be paid from any unencumbered cash of Amazing Energy Holdings, if any;

4. The Bid Deadline is 5:00 p.m. CST on February 11, 2022.

5. The Auction Date contemplated in the Sale Procedures, if any, shall be at such time and date as reasonably determined by the Neutral Party.

6. The Sale Hearing shall be held in conjunction with and during the Confirmation Hearing on the Plan Proponents' Joint Plan of Liquidation, as amended (the "Plan"). Objections or other protests to the proposed sale under 11 U.S.C. §363, as permitted by the Sale Procedures, shall be filed and served upon Plan Proponents and Debtors and as otherwise required under the Bankruptcy Rules and Local Rules. The Court will take up

all issues with respect to the conditions of the §363 sale and §365 assumption and assignment of executory contracts and leases at the Sale Hearing;

7. Only qualified bidders can bid at the auction. Anyone claiming a lien on any of the Assets may submit a credit bid for some or all of such Assets. Any motion pursuant to 11 U.S.C. § 363(k) that seeks to disqualify a party seeking to submit a credit bid shall be filed on or before January 10, 2022 and shall be set for hearing at a date to be selected by this Court. At the hearing on the 363(k) motion, the Court will determine the extent, terms and conditions of any credit bid pursuant to Bankruptcy Code §363(k) and other applicable law. For the avoidance of doubt, nothing in this Order, the bidding procedures, or the asset purchase agreement shall authorize or require the transfer of any Assets to the purchaser unless and until the purchaser (or its duly-qualified operator) qualifies as a P-5 operator with the Railroad Commission of Texas or its equivalent qualification with the New Mexico Oil Conservation Division, which includes but is not limited to the posting of all financial assurance requirements with the Railroad Commission of Texas and/or the New Mexico Oil Conservation Division, as operator for the oil and gas Assets. Accordingly, as a condition of the transfer of the operatorship of the oil and gas Assets to the purchaser (or its duly qualified operator) as new operator, the purchaser shall comply with all applicable nonbankruptcy law (including but not limited to the Texas Natural Resources Code) regarding the execution and filing of a bond, letter of credit or cash deposit as financial security with the Railroad Commission of Texas and/or with the New Mexico Oil Conservation Division;

8. Nothing in this Order releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit arising from or related to the

enforcement of any applicable police or regulatory law or regulation (including but not limited to those of the Railroad Commission of Texas and/or the New Mexico Oil Conservation Division, to which any entity would be subject to as the owner or operator of property from and after the date of the closing of any Sale approved by the Court. Nothing in this Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police and regulatory law; and

9. A copy of this Order and the Sale Procedures shall be included in the solicitation package of materials sent to creditors, parties and parties in interest regarding the First Amended Disclosure Statement and Joint Plan of Liquidation proposed by Plan Proponents.

10. The Neutral Party will be the only party authorized to market the Debtors' assets under these bid procedures. No later than ten (10) days after entry of this Order, any potential bidder, including but not limited to the Debtors and their respective officers, directors, owners, agents or other persons in control of the Debtors, AAPIM, Benny Barton and the Plan Proponents shall submit a list of potential bidders to the Neutral Party, of whom they are aware who might be interested in bidding. The list shall be to the best of their recollection and in good faith, and certify that they are not aware of any person or entity who has been left off the list to the best of their knowledge. The list submitted shall be kept confidential by the Neutral Party and may only be used in creating a data base for solicitation of bids. The source of the names on the list shall not be subject to any disclosure to any other party.

Signed on 1/10/2022

*Brenda T. Rhoades* YM
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

The following bidding procedures ("Bidding Procedures") for the Assets are as follows:

**Qualification of Bidders**

(1) <u>Qualified Bids</u>. In order to constitute a Qualified Bid (as defined below), any Bid submitted by a bidder (each, a "Bidder") must: (i) be submitted in writing and actually received by Neutral Party with a copy to each of the Plan Proponents, Amazing Energy and AEH ("Notice Parties") prior to 5:00 p.m. CDT on February 11, 2022 (the "Bid Deadline"), and (ii) satisfy the following requirements (collectively, the "Bid Requirements"):

(a) (i) Identify the Assets the Bidder seeks to purchase, (ii) contain the form of and total consideration to be paid by such Bidder, including the amount of proposed cash consideration and liabilities to be assumed, with such consideration allocated on an asset-by-asset basis, (iii) provide for the assumption of all plugging and abandonment and other obligations relating to the Assets subject to the Bid as set forth in Section 1.4(g) of the Form APA (the "Assumed Liabilities"), (iv) provide for the performance of the bonding obligations relating to the Assets subject to the Bid required by Section 6.10 of the Form APA.

(b) Not be subject to any: (i) financing contingency, (ii) contingency relating to due diligence after the Bid Deadline, (iii) contingency relating to the approval of the Bidder's board of directors or other internal approvals or non-governmental third party consents or approvals, or (iv) any conditions precedent to the Bidder's obligation to purchase the Assets.

(c) Provide that any cash portion of the purchase price will be paid in cash, cash equivalents, or such other consideration acceptable to the Court. The bid for assets which constitute an unencumbered oil and gas lease shall require a minimum cash bid of $100,000.00 and for any other unencumbered tangible asset, a cash bid of $25% of the bid amount

(d) Be accompanied by the provision of a certified or bank check or wire transfer in the amount of at least 10% of the purchase price proposed in the Qualified APA as a good faith deposit (the "Good Faith Deposit"), which shall serve as liquidated damages if the Bidder defaults with respect to its Bid.

(e) Not be conditioned upon the Court's approval of any bid protections, such as a breakup fee, termination fee, expense reimbursement, working fee or

similar type of agreement.

(f) Contain a written statement that the Bidder agrees to be bound by the terms of the Bidding Procedures and the Sale Procedures Order and include a commitment that the Bidder shall (i) commence and complete all filings with respect to necessary government and other approvals within three (3) business days following the entry of the order confirming the Sale of any of the Debtors' Assets to such bidder; and (ii) consummate the purchase of the relevant Assets within thirty (30) days following entry of the Order confirming the Sale of all or a portion of the Assets of the Debtors.

(g) Identify, with particularity, each and every executory contract ("Contract") unexpired lease ("Lease") it intends to assume.

(h) Be accompanied by evidence satisfactory to the Neutral Party that the Bidder is willing, authorized (including by such Bidder's board of directors or comparable governing body), capable and qualified financially, operationally, legally and otherwise, of unconditionally performing all obligations under Bid. The Bid will also contain written evidence of a firm commitment for financing or other evidence of ability to consummate the proposed transaction without financing.

(i) Provide (i) that the Bidder agrees to serve as the Backup Successful Bid (as defined herein) if it is selected as the next highest and best bid for any particular Assets after the Successful Bid is determined in accordance with the Bidding Procedures, and (ii) that such Bid shall remain open and irrevocable until the earlier of (A) (60) days after the entry of the Confirmation Order, or (B) closing of the Sale transaction to the Successful Bidder.

(j) Fully disclose the identity of each entity that will be bidding in any Auction scheduled by the Neutral Party (and any equity holders in the case of a Bidder which is an entity specially formed for the purposes of effectuating the contemplated transaction) and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction.

(k) Expressly acknowledge and represent that the Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its Bid, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents, or that of any of its legal, financial, or other advisors, in making its Bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtors or the proposed Sale of the Assets,

or the completeness or accuracy of any information provided in connection therewith, and (iv) accepts and consents to the Bidding Procedures and acknowledges the Court's exclusive jurisdiction to resolve issues related thereto.

(l) If the Bidder or any principal, officer and/or director and/or managing member and/or employee of the Bidder is or was an insider of any of the jointly administered Debtors and/or AEOG, such Bidder shall represent and certify in writing at the time of the submission of any Bid that: (1) all information available to such Bidder that was directly or indirectly obtained through any of the Debtors or AEOG pertaining to any of the Debtors has been disclosed to the Neutral Party and has provided such information or material to the Neutral Party such that such information or material shall be placed and has been placed in the Data Room by no later than two weeks prior to the Bid Deadline. The Neutral Party shall then notify all bidders of the update to the Data Room, with specific notification to all other Bidders as to how to locate and review such information or material within the Data Room ; (2) the Bidder (or any principal, officer and/or director and/or managing member and/or employee of the Bidder) has disclosed any compensation or assets received from any of the Debtors, and whether such compensation or assets were approved by the Bankruptcy Court if such were received on or after April 6, 2020. All bids shall be open and available for all other bidders to review and independently evaluate.

(m) As part of the qualification requirements, Bidders may, but are not required to show proof that: (a) the Bidder qualifies for or holds an active/current P-5 with the Railroad Commission of Texas ("RRC") or its equivalent requirement under the New Mexico Oil Conservation Division (NMOCD") or (b) that the Bidder has employed a duly-qualified operator that holds an active/current P-5 with the RRC or equivalent authority with the NMOCD. This P-5 requirement, or its equivalent, includes, but is not limited to, the posting of all financial assurance requirements with the RRC and/or the NMOCD to be the operator of the oil and gas Assets.

(2) <u>Notice of Qualified Bidders</u>. A Bid that satisfies each of the requirements to be a Qualified Bid, as determined by the Neutral Party shall constitute a "Qualified Bid," and the Bidder submitting such Bid shall be a "Qualified Bidder." The Neutral Party shall notify each Qualified Bidder that such party is a Qualified Bidder within one (1) business day after the Bid Deadline. If Plan Proponents, Amazing Energy and AEH believe that a Bid should constitute a Qualified Bid that Neutral Party does not, they shall be required to file a motion and obtain a Bankruptcy Court order which determines the Bid to be a Qualified Bid.

(3) Bids on Individual Assets or Asset Classes Permitted. Bids may be submitted on certain of the Sale Assets or one or more classes or categories of the Sale Assets. There is no requirement that a Bid be made solely for the entirety of the Sale Assets.

(4) Plan Proponents are deemed to be a Qualified Bidder for all purposes hereunder, and the provisions of the Plan regarding consideration for the Sale Assets shall be deemed to be a Qualified Bid by Plan Proponents. Notwithstanding the foregoing, if the Court determines the Plan Proponents may not credit bid on all or a portion of the Assets of the Debtors, the Plan Proponents within three (3) business days of the Court's determination of the 363(k) may modify, and/or withdraw all or a portion of this Bid contained in the Plan and such Bid shall be timely and shall be considered by Neutral Party. The Plan Proponents may make subsequent Qualified Bids at the Auction, and such bid or bids shall be deemed to be a Qualified Bid(s) if they meet the criteria set forth above. For the avoidance of doubt, nothing herein shall prevent the Neutral Party from considering any Bid submitted jointly by a third-party purchaser and Plan Proponents (or their assignees or designees) provided that such Bid meets the requirements of the Bid Procedures set forth herein or has been authorized by the Court.

(5) Evaluation of Competing Bids. The Bidding Procedures set forth various factors that will be considered by the Neutral Party (the "Bid Assessment Criteria") in evaluating each Qualified Bid.

(6) No Qualified Bids. If the only Qualified Bid is the Qualified Bid of Plan Proponents as set forth in the Plan or as a modified above, the Neutral Party shall not hold an Auction and Plan Proponents' Qualified Bid as set forth in the Plan or as modified by the Court's ruling on a 363(k) motion shall be the Successful Bid for the Sale Assets.

(7) All Bids made shall remain open until the earlier of (i) if the Bidder submits the Successful Bid or is deemed to be the Backup Successful Bidder, sixty (60) days after the entry of an order by the Court approving a definitive agreement providing for the Sale of those Sale Assets to which it relates, and (ii) if the Qualified Bidder is not selected as a Successful Bidder or the Backup Successful Bidder, three (3) days after the end of the Auction with respect to the relevant Sale Assets it has bid on.

**(A) Highest and/or Best Bid.**

The Neutral Party shall provide the Court with his report as to the recommendation of the Successful Bidder or Successful Bidders three (3) business days after the Bid Deadline or the conclusion of the Auction. The Neutral Party shall provide the same report provided to the Court to all bidders at the same time provided to the Court. However, in no event shall the Neutral Party's report to the Court be filed any later than 7 business days prior to the dates set for the Sale Hearing and the Confirmation Hearing. The Successful Bidder or Successful Bidders will be presented to the Court by the Neutral Party at the Court hearing approving the Sale of Assets. Notwithstanding, all bids will be presented to the Court at the Sale Hearing and the Confirmation Hearing. Not all assets of the Debtors are required to be sold. Bidders

may bid on a portion of the assets and are not required to bid on all of the assets. As a result, there may be more than one highest and/or best bid depending upon which assets are sought to be purchased and for what purpose.

### (B) Liens Attach To Sales Proceeds

Except with respect to Assumed Liabilities and Permitted Encumbrances, all valid and properly perfected Liens against the Debtors' Sale Assets shall attach to the net cash proceeds ultimately attributable to the Sale Assets against which such Liens are asserted with the same validity, enforceability, priority, and force and effect as they had against the Sale Assets or their proceeds as of the Petition Date (except to the extent such Liens are assumed under the applicable asset purchase agreement). Distribution of the proceeds of the Sale and other assets of the Debtors not sold at the Sale Hearing shall be distributed pursuant to a Plan or further Order of the Court.

### (C) Reservation of Rights.

The Neutral Party, after Notice and Hearing and prior Court approval, may request the Court to modify these Bidding Procedures at or prior to the Auction, including, without limitation, requesting extending the deadlines set forth herein with respect to any or all Bidders, imposing additional terms and conditions with respect to any or all Bidders, and/or adjourning the Auction at or prior to the Auction.

## Notice Procedures

(1) After entry of the Bid Procedures Order, the Plan Proponents shall cause these Bid Procedures to be served in conjunction with the solicitation package of the Plan and Disclosure Statement to all the creditors, parties and parties in interest entitled to receive notice.

(2) Sale Hearing. The Successful Bid(s) shall be deemed to have been accepted only when the Bid(s) has/have been approved by order of the Court following the Sale Hearing. Upon the failure to consummate a Sale of the Assets after the Sale Hearing because of the occurrence of a breach or default by the proposed purchaser under the terms of the Successful Bid(s), the Backup Successful Bid(s) shall be deemed the Successful Bid(s) without further order of the Court, and the parties shall be authorized to consummate the transaction contemplated by the Backup Successful Bid.

## Good Faith Deposits.

(1) The Good Faith Deposit of the Successful Bidder(s) shall be applied to the purchase price of such Sale transaction at closing. The Good Faith Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Neutral Party in his sole discretion and shall be returned (other than with respect to the Successful Bidder(s) and the Backup Successful Bidder(s)) on or within three (3) business days after the Auction. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

(2) If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Neutral Party will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which shall be retained by the Debtors as an asset to be transferred to the Creditor Trust as liquidated damages upon Confirmation of the Plan, in addition to any and all rights, remedies, and/or causes of action that may be available to the Plan Trustee, and the Debtors shall consummate the proposed transaction with the applicable Backup Successful Bidder without the need for an additional hearing or order of the Court.

**Rights Notice.**

(1) If any person or entity receiving the Sale Notice asserts that any property or right cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the applicable purchase and sale agreement on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights or similar rights (a "Preferential Right"), then such person or entity must file a notice with the Court with all supporting documentation (a "Rights Notice") on or before the Bid Deadline. Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right.

**Objections.**

(1) All objections to the Sale of the Sale Assets, the assumption and assignment of the Assumed and Assigned Contracts, or any relief requested in the Motion other than the relief granted by this Court in the Sale Procedures Order must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules of the Court; (d) filed with the Bankruptcy Court at the time designated by the Court pursuant to the order setting the Confirmation Hearing date (the "General Objection Deadline"); and (e) served in accordance with the Local Rules so as to be received on or before the General Objection Deadline by the following (collectively, the "Objection Notice Parties"): (1) counsel for Plan Proponents, Attn: Rosa R. Orenstein, rosa@orenstein-lg.com and Carol Lynn Wolfram, clwolframlegal@gmail.com; (2) counsel for the Debtors, Attn Douglas Draper, ddraper@hellerdraper.com; (3) the Office of the United States Trustee for the Eastern District of Texas; and (4) all creditors and parties in interest that have filed a request for notification. The objection shall state the legal and factual basis of such objection.

**Good Faith Sale.**

Upon compliance with the sale procedures and the entry of the Confirmation Order or Order approving the Sale of the Sale Assets and premised upon the Court finding that the Sale is a good faith Sale of the Sale Assets, the Court will be entitled to find that the Successful Bidder(s) is/are

a good faith purchaser(s) entitled to the full protection afforded by § 363(m) of the Bankruptcy Code.

APPROVED AS TO FORM:

Arnold Jed Miesner

_Rosa R. Orenstein w/client permission_

Arnold Jed Miesner, a natural person

Lesa Renee Miesner

_Rosa R. Orenstein w/client permission_

Lesa Renee Miesner, a natural person

Petro Pro, Ltd

By: _Rosa R. Orenstein w/client permission_

Its: _Counsel_

JLM Strategic Investments, LP

By: _Rosa R. Orenstein w/client permission_

Its: _Counsel_

Amazing Energy, LLC

By: _Douglas Draper w/ permission_

Its: _General Bankruptcy Counsel_

**ORDER ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH SALE OF CERTAIN DEBTOR ASSETS IN CONNECTION WITH JOINT PLAN OF LIQUIDATION AND OTHERWISE– Page 11 of 12**

Amazing Energy Holdings, LLC

By: _Douglas Draper w/permission_

Its: General Bankruptcy Counsel

BENNY BARTON

By: _Patrick J. Schurr, with permission_

Benny Barton, a natural person

AAPIM, LLC

By: _Patrick J. Schurr, with permission_

Its: Counsel

WYATT PETROLEUM, LLC

By: _Marla Broaddus, with permission_

Its: Counsel

WYATT PERMIAN, LLC

By: _Marla Broaddus, with permission_

Its: Counsel

<span style="color:red">EXHIBIT B</span>

# BIG STAR INVESTMENTS, LLC

February 11, 2022

**Send Via Email (jhaber3309@aol.com):**
Jay Haber
Court Appointed Sale Facilitator

Re: Bid for Amazing Energy Holdings' New Mexico Asset

Dear Mr. Haber,

Pursuant to the Order Establishing Bidding Procedures in Connection with Sale of Certain Debtor Assets file in Chapter 11 Case No. 20-41561 in the Eastern District of Texas (Sherman Division), Big Star Investments would like to submit the following offer.

**OFFER:**

$250,000.00 CASH

**ASSETS:**

**Leases:**
1. Oil and Gas Mineral Lease, entered into by and between the Marilyn Maxwell Mineral Trust, J.P. Morgan Chase Bank, N.A., Trustee, as Lessor, and Shaw Interest, Inc., as Lessee, executed on April 3, 2013, recorded in Volume 1834, page 474, of the Official Public Records of Lea County, New Mexico.

2. Oil and Gas Mineral Lease, entered into by and between William S. Midkiff and Nora Thompson Midkiff, as Lessor, and Shaw Interest, Inc., as Lessee, executed on March 26, 2013, recorded in Volume 1839, page 237, of the Official Public Records of Lea County, New Mexico.

3. Oil and Gas Lease, entered into by and between the Santa Fe Pacific Railroad Company, as Lessor, and the Oil Development Company of Texas, as Lessee, executed on September 17, 1973, recorded in Volume 285, page 39, of the Oil and Gas Records of Lea County, New Mexico.

4. Oil and Gas Lease, entered into by and between the State of New Mexico, as Lessor, and The Wiser Oil Company, as Lessee, executed on August 1, 1971, known as lease LO-6428 of the lease records of the State of New Mexico.

5. Oil and Gas Lease, entered into by and between the Santa Fe Pacific Gold Corporation, as Lessor, and the Santa Fe Energy Resources, Inc., as Lessee, executed on October 2, 1995, recorded in Volume 523, page 481, of the Oil and Gas Records of Lea County, New Mexico.

# BIG STAR INVESTMENTS, LLC

6. Oil and Gas Lease, entered into by and between the State of New Mexico, as Lessor, and Eastland Oil Company, as Lessee, executed on September 1, 1971, known as lease L0-6540 of the lease records of the State of New Mexico.

7. Oil and Gas Lease, entered into by and between the State of New Mexico, as Lessor, and Shaw Interest, Inc., as Lessee, executed on August 1, 2014, known as lease V0-9732 of the lease records of the State of New Mexico.

**Wellbores:**
1. Maxwell 24-001H        API 30025426700000
2. Williams 12-4 State #1  API 30025427260100
3. Larry 18 SAU 1-03H     API 30025434980000
4. MOE 35 SAU 1-04H       API 30025434990000
5. Santa Fe #2            API 30025256690000
6. Santa Fe #4            API 30025256690000
7. State 7-1              API 30025275110000
8. Santa Fe #1 SWD        API 30025248090000
9. Bobby Fee #1           API 30025347650000
10. Lewis Fee #1          API 30025342360000

**Equipment:**
All Equipment associated with the above listed wellbore, including but not limited to the items shown on Exhibit A.

**Contracts:**
1. Oil Purchasing contract with Plains Marketing, LP
2. Gas Purchase contract with Targa Midstream Services, LLC
3. All Surface Use Agreements (Recorded or Not Recorded)
4. Salt Water Disposal Contract with Manzano, LLC

**Files and Records:**
All files and records associated with the subject wells including but not limited to all accounting statements, production statements, logs, geophysical and geological records.

**STATEMENT:**
Big Star Investments, LLC agrees to be bound by the terms of the Bidding Procedures and the Sale Procedures Order and shall (i) commence and complete all filings with respect to necessary government and other approvals within 3) business days following the entry of the order confirming the Sale (ii) consummate the purchase of the relevant Assets within thirty (3) days following entry of the Order confirming the Sale of all or a portion of the Assets.

**BACKUP SUCCESSFUL BID:**
Big Star Investments, LLC agrees to serve as a backup successful bidder in the event it is the next highest and bed bid for the subject assets. The bid shall remain open and irrevocable until the earlier of (A) 60 days after the entry of the confirmation order or (b) closing of the sale transaction to the successful bidder.

P.O. Box 122171 • Fort Worth, Texas 76121 • (817) 266-4246

# BIG STAR INVESTMENTS, LLC

**DISCLOSURE:**
The parties to this bid are as follows:
1. Lucas Knickerbocker, Managing Member, Big Star Investments, LLC

**ACKNOWLEDGEMENT:**
Big Star Investments, LLC does hereby acknowledge that it has conducted its own due diligence in and to the subject assets prior to bidding, and it has relied sole upon its own independent review, investigation, and/or inspection of any documents, and it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, and further, it accepts and consents to the bidding procedures and acknowledges the Court's exclusive jurisdiction to resolve issues related thereto.

**NOTIFICATOIN:**
Notification is hereby given that Lucas Knickerbocker, in his capacity as Consultant to Amazing Energy, LLC and Amazing Energy Holdings, LLC, has had knowledge of the subject properties due to his position. However, Lucas Knickerbocker has taken due care to ensure that any information that was directly or indirectly obtained has been disclosed to Jay Haber, the court appointed neutral party to the subject sale. All relevant information to the subject assets has been provide to other potential bidder through the data room, and Lucas Knickerbocker has made himself available to any bidder to answer and questions or concerns they may have regarding the subject assets.

Sincerely,

Lucas Knickerbocker
Managing Member of
Big Star Investments, LLC

# BIG STAR INVESTMENTS, LLC

## EXHIBIT A

Inventory of Field Equipment and Facilities
Lea County, NM

| Well Identification | | | |
|---|---|---|---|
| Section | Well | Lease | Description: |
| 7 | 1 | STATE | Pumpjack (Morgan 160) w/20 HP electric motor, chemical drums, (2) 210 BBL steel oil tanks, (2) 210 BBL fiberglass water tank, 4'x20' gun barrel, water transfer pump, circulating pump |
| 12 | 004H | WILLIAMS STATE | Pumpjack (Lufkin IRO Marc 640) w/electric motor, (2) 500 BBL fiberglass water tanks, (2) 500 BBL steel oil tanks, 12' x 20' gun barrel, fluid to gas separator; water transfer pump, oil circulating pump, chemical drum, meter run with Scada, large frac water pit, (7) 8' rods and (2) 1 1/4" fiberglass rods on site |
| 24 | 001H | MAXWELL | This location also serves as a central saltwater gathering facility; Pumpjack (Lufkin 640 Marc) w/60 or 75 HP electric motor, (2) 500 BBL steel oil tanks, (3) 500 BBL water tanks, (1) 750 BBL steel gun barrel, water transfer pump, oil circulating pump, fluid to gas separator, chemical drums, there are 8-1/4" fiberglass rods and stubs on location, dual transformers are fenced with pipe |
| 31 | 1 | LEWIS FEE | Normal wellhead for injector, wellhead fenced with steel pipe |
| 25 | 1 | BOBBY FEE | Normal wellhead for injector; wellhead fenced with steel pipe |
| 18 | 103H | LARRY SA UNIT | Pumpjack (Lufkin 640 Marc) w/75 HP electric motor, (2) 500 BBL water tanks, (2) 500 BBL steel oil tanks, 10'x20' gun barrel, water transfer pump, circulating pump, chemical drums, 11 3/4" rod stubs are on site; dual transformers are fenced with pipe |
| 25 | 104H | MOE SA UNIT | Pumpjack (640 Abscot) w/50HP electric motor, dual transformers are fenced with pipe |
| 35 | 1 | SANTA FE | American pumpjack w/electric motor, chemical drum, additional steel and fiberglass pipe on location; |
| 35 | 4 | SANTA FE | Pump jack w/electric motor, chemical drum |
| 35 | FACILITY | MOE/SANTA FE | Central tank battery for the Santa Fe 1 and 4 and the Moe 104H wells; Santa Fe = (2) 4' x 20' gun barrels, (2) 500 BBL fiberglass water tanks (1 for SF-1, 1 for SF-4 and Moe), (4) 500 BBL steel oil tanks (1 for SF-1, 1 for SF-4, and 2 for Moe) SWD disposal pump (SF 2); Moe - (2) 10' x 20' gun barrel, heater treater, meter run with scada, circulating pump, water transfer pump, water disposal pump |
| 35 | 2 | SANTA FE | This the SWD well for Santa Fe 1 and 4; there is no surface equipment or facilities on site |
| 3 | 103H | CURLY SA UNIT | large caliche pad with concrete cellar, approx 1.5 mi of location road already built |

P.O. Box 122171 ● Fort Worth, Texas 76121 ● (817) 266-4246